Good afternoon, Christine Cook, Assistant State's Attorney on behalf of the people. And you probably both know this because you've been here before, but this microphone does not record. So just keep your voices up. You will each have 20 minutes. You don't have to take the whole 20 minutes. Would you like to reserve any time for rebuttal? Yes, I'd like to reserve 5 minutes for rebuttal. Okay. And the clerk will, we hope, stand up when your 15 minutes are up, and then we'll ask you to conclude unless there's a question pending. Please proceed. May it please the Court, Counsel. You raised four issues in the brief on appeal. I'd like to discuss the three of them, the indictment issue, the ineffective assistance of counsel, and the request for an in-camera review. I actually think you raised five issues. Because your issue number one, there's actually two issues there. And you have it listed as one issue. The first issue is whether or not the indictment was done reasonably broad. And the second issue is whether or not the Court erred by not bringing the motion to provide the appeals in particular. So I think those are two different issues because they would have two different standards of review. And you list them as one issue. And therefore, the question becomes, well, what are you looking for in terms of the standard of review here? Or what do you believe the standard of review is? Because there's actually two different issues. Right. I think the standard of review regarding the indictment is de novo. This Court is in just as good a position to determine whether, on the face of the indictment, it's overbroad. We did argue that the Court should have required more detail. The State did respond to both particulars with the same date range plus adding six. So do you see what's the definition? Because there's two different – well, you didn't say State, but I agree with you that it would be de novo under the indictment. But appeals in particular, what would be the standard of review? I believe that would be reviewed for an abuse of discretion. Okay. So therefore, they would be two different issues because they clearly have two different standards of review. Right. And essentially – So you actually have five issues here. So as you speak to us, I think you should concern yourself with the de novo review as it relates to the indictment. Absolutely. And that's where I'd like to focus on. And if my brief wasn't clear and it appeared I was raising two issues, it was intended all wrong as an attack on the indictment itself. Sure. This indictment spanned a five-year period, which is far too broad for anyone to be able to prepare an adequate defense, especially in this case where that period proved inaccurate at trial where the testimony related only to X within a three-year period. It might be tempting, as the State essentially argues in its brief, to say that these were heinous crimes, Mr. Albron's a sex offender, and we're not going to give him relief due merely to an We can only call him a sex offender or an offender at all really because he had no priors because of the result of a trial that began with and depended on this overbroad indictment. If this overbroad indictment violated due process in a way that undermined his ability and his right to prepare a defense, that flaw inflects the entire trial as well as its outcome. The adversarial process – And how did it impact on his ability to prepare a defense? Well, I mean, we can theorize how it impacted on his ability to prepare a defense, but he does not need to show prejudice in this case by preserving this issue. Are you taking the position that you objected to the indictment by asking for a bill of particulars? Yes, and I think that is supported by the Supreme Court decision in Espinoza, cited in the brief, where they held that this issue was preserved by a motion to amend the indictment to include more detail. The defense moved to amend an indictment to include more detail. The state refused, and the court held that that was sufficiently preserved. There were actually co-defendants in that case. The co-defendant did move to dismiss the indictment. They treated both defendants equally, held the issue was preserved, and held that no prejudice was required. Doesn't a request for a bill of particulars assume a valid indictment? I'm not necessarily sure it would assume a valid indictment any more than a motion to amend an indictment to include more details. In both cases, the party is seeking more detail to be able to preserve a defense. In Espinoza, they were seeking the name – there was an unnamed complainant in the indictment. In either case, you're asking the state to provide more detail, and the Supreme Court held that that was sufficient to preserve the issue. What if the state gives you all the detail they possess? That – the state, by statute, is required to provide as much detail as it can do, but if that's still not enough to prepare a defense, due process is a higher calling here, and there needs to be – How is that presented to Judge Cannon that, okay, Judge, they gave me everything they had, but I still can't prepare a defense? How is that presented? I think that, if I recall, counsel did ask – I think the bill of particulars was about a year before trial. Counsel, I think, renewed that and asked for more detail, if I'm not mistaken, again, saying that this is too broad of a period. And it can impact a defendant's ability to prepare a defense. Well, you all appreciate that it could, but how did they convey to Judge Cannon that it did prevent them from asserting a defense? I mean, typically, someone would say, well, during this time period, I was assigned to the 5th Infantry Division in Iraq. I was out of the country, you know. I've been here, I've been there. I can't figure out what period of time you're talking. Right. There was no proffer, and I don't think one is required because, again, no prejudice is needed to be shown in this case of a preserved claim. But I also think it would be incredibly difficult for a defense attorney to be able to say how a five-year period makes it difficult to prepare a defense in any specific way because that attorney may have not felt the need to pursue certain avenues of defense that might cover only a section of that. There may be lots of avenues of defense that went uninvestigated, and counsel doesn't know. There are just some more unknowns here. Counsel can't know the ways in which she may have been able to prepare a defense had the indictment been more narrowly tailored, had there been detail provided, like in some of the cases we've cited in the briefs that's discussed as providing seasons or grades of school or before or after certain marking holidays or birthdays, which it turns out the complainant was able to provide at trial. It just wasn't disclosed to the defense before trial. She was able to say it ended before she turned nine, before her younger brother was born. There are also some other time markers in the testimony about when the parent's bedroom moved from downstairs to upstairs that could have helped narrow the time frame, and none of this was discovered or provided. And so there's no way for a defense counsel to know what unexplored defenses may have worked had she known a narrower time frame. And where defense cannot adequately prepare for trial, the adversarial process has broken down and become unreliable. We rely on this to discern the truth as near and best as possible. But with the breakdown, without an ability to prepare defense, we can't rely on the outcome of that trial process to then justify and excuse the flaw in the very process that produced the outcome. And so understanding these are serious crimes, that shouldn't necessarily be a finger on the scale, as the state's brief suggests. And the Supreme Court has reversed in Espinosa. Again, that was a child sex abuse crime that the Supreme Court affirmed the dismissal of indictment because it lacks sufficient detail. We've also argued that counsel bureau was ineffective for failing to object to certain evidence and arguments by the prosecutor that went directly to the complainant's credibility. And the credibility was, as the state agrees, significant in this case. And these all touched on it. I'd like to focus at least at the beginning on the tally marks. These were, you know, this was out of court assertions. It was hearsay much like a diary being introduced as hearsay. But it was even more unreliable than typical hearsay because it's not known when these were made. It's known for a fact they weren't contemporaneous because she admitted that they were made in groupings. So it wasn't one mark for each incident. They were made just in groupings showing that they weren't made at the specific time of an incident. And lacking any idea when they were made, it just becomes less reliable than even typical hearsay, which is itself by law and by rule not reliable. And yet these were used by the state as substantive evidence. They were elicited on direct examination. They were argued as powerful evidence in closing. The prosecutor pointed out to the jury that they would have this picture of these tally marks in their jury deliberations. So the jury is back there looking at tally marks alleging supposedly alleging 14 incidences of misconduct when it never should have been introduced. The jury never should have been able to hear about this or see this. And counsel failed to object on hearsay grounds. Perhaps that was trial tactics. No, I think it was cross-examination of her cousin or girlfriend or something. I used to be up in the bedroom all the time and I never saw it again. Yes, counsel tried to undermine the credibility of these tally marks. But I think we can state for a fact it was not trial strategy because counsel tried to keep these up. Counsel tried to keep them out by saying this is disclosed too late. It was just the Friday before Tuesday or Wednesday trial. That was the basis. It was too late. It wasn't that it was hearsay. Oh, of course. That was the basis. But that shows counsel didn't want these to come in. Counsel wanted to keep them out and failed by making the wrong objection. So it wasn't trial strategy. Even if it was trial strategy, trial strategy, as you know, can be deemed unreasonable. And it would be unreasonable to allow the jury to look at a supposed contemporaneous counting of these incidences of abuse when they're completely unreliable, there was no testimony that she was abused a specific number of times. Of course, the pretrial response to the particular said only six times. And it would be an unreasonable strategy to allow it in. But I think we can state as a matter of fact it was not counsel's strategy because she tried and failed to keep them out. And, again, this went right to her credibility because this was a case with an outcry four years after the incidents supposedly stopped. And there was no indication from a mom of any signs of anything going on earlier, no evidence of any failing performance in school or any other issues like that. And suddenly the state's allowed to bring in this hearsay of supposed contemporaneous accounts and tell the jury, look, she was marking this all wrong. Counsel also failed to object to the testimony about what happened in these thousand-plus other cases that a detective had worked on which had no direct relation to the case at hand, which also went to bolster TA's credibility and failed to object to closing arguments. The state said some of these were invited, but a couple of these were mentioned in the state's opening closing argument. The prosecutor said, disregard the absence of any exonerating statements by Mr. Abram, which would be and should be inadmissible. The prosecutor said when he was confronted, he didn't say, what's going on? Why is she saying these things? But he might have. They just wouldn't have been admissible. And that was in the opening closing argument. I lost you a bit. He might have what? He might have said these things, but they were inadmissible. So there was no reason to dig them up, no possibility to introduce them in evidence. So the prosecutor is making an argument based on the absence of evidence that would be inadmissible and claiming it doesn't even exist when there's just no knowledge of it, whether it exists or not, because it can't come in at trial. The prosecutor said similarly, he didn't start screaming to the mob, what's going on with our daughter? You're saying he couldn't have put it in. The state could have put it in, but you're saying he couldn't have put it in. The state, I suppose, could have put in exonerating statements, and the defense would have liked those to come in. But they're inadmissible and could have been kept out. The state moved to keep them out before trial. So I think it is a routine motion in many cases to keep out, exclude the defendant from introducing any exonerating statements. I see. You're not saying there was a specific exonerating statement that didn't come in in this case that we're aware of? No, no, I'm not. I'm saying counsel argued to the jury as if nothing existed when the prosecutor asked. But the prosecutor knows these would have been inadmissible. Could they exist? Yes. Your prejudice argument as to all these decisions by defense counsel or our absence of decisions by defense counsel, what's your prejudice argument as to these mistakes? Well, all the mistakes affected the jury's assessment of the complainant's credibility. And the complainant's credibility was key in this case. As the state mentioned in its brief, it caused her credibility a significant issue in this trial. As I discussed a little while ago, it was an outcry four years after the supposed last incident. The mom found no indication. There were some marital troubles in the household, and the dad moved out. There was a lot for the jury to worry in assessing her credibility. And then these erroneous pieces of evidence about the tally marks bolstered her credibility. The argument that the delayed outcries occur in other cases without any being allowed to ask the detective whether those were proven to be fruitful and true or accurate or not bolstered her credibility about the delayed outcry. And the closing argument also supported her credibility and supported the state's case by suggesting an absence of evidence that we had no idea about. And I know the state will probably argue, and they did in their brief, that the motion ended up being withdrawn, a pre-trial motion to keep out exonerating statements, because counsel said she's not aware of any. But defense counsel would know she can't get these in, so she wouldn't have any reason to investigate whether he made any self-exonerating statements. And there's no indication at this point, it was before trial, whether she had been able to, if she ever was able to speak with the mom and the social worker to see if he actually did say these things, that the statement told the jury he didn't deny it. So I think her statement that she's not aware of any doesn't necessarily undermine this claim. I'd like to touch lastly on the request for in-camera review of certain documents. I think this case is on all fours with Esquerena, which was a request for statutorily privileged DCFS records. The appellate court said that the trial court had a duty to review these in camera to determine whether there was anything material and relevant to the defense, and if so, provide it. And on appeal said, if so, grant a new trial and provide it. I think this case is just, it was on all fours, it's a different statutory privilege, but it's the exact same issue, same as in the U.S. Supreme Court in Ritchie, same as in Esquerena, and we ask at the least this court remand for that in-camera review. If there are no further questions, thank you. Thank you, and thank you for having to deal with all the outside noise. Can I move this? You can. I'll just make sure it can pick you up. May it please the court, counsel, Christine Cook on behalf of the people. Justice Walker, as you know, the first issue is actually two different issues, the sufficiency of the indictment and then the answer to the bill of particulars. Regarding the sufficiency of the indictment, defendant wants this court to look at only one thing, a five-year time span, which in its abstract seems rather daunting, until you turn to the facts, which is always a necessary analysis for a case like this. Here we have predatory criminal sexual assault of a very young child that went on and on for years. It's not the number of the years in the indictment, because in order to request that, defendant's argument necessarily is asking this court to make a broad-line rule that indictments can only be two years, 18 months, or three years. In fact, in this case, there were three years in your indictment that you knew you weren't going to have any testimony of because she said it ended when she was nine. Yes, she testified to that, but the record also shows that when the bill of particulars was in fact filed, we took a continuance and spoke to the victim in order to file, in order to narrow down the bill of particulars, in order to be more specific. And when we came back to court, the prosecutor told the judge, we've talked to the victim and this is as specific as we can get. Now, she did testify taking two years off of that. I can't answer what the difference in that is because that's not in the record and I don't know the answer to that. But three years or five years, three years is pretty wide too. The issue for this court is what are the facts? There is no case law that says five years is too broad. The facts are the facts. If they're ten years, if they're eight years, if they're five years, it is what it is. And we don't, the defendant can't come up with any case law that says that there's some bright-line numerical rule to make an indictment too broad when the crimes are ongoing and cover a vast amount of time. So you view this as an issue that the defendant preserved by making a timely objection? Yes. Yeah, yeah. We don't have any forfeiture claims on this at all. He filed a motion for a bill of particulars and we answered the motion for a bill of particulars. There's no de novo review on the bill of particulars. It's an abuse of discretion. And the bottom line is we answered that and the case law is replete as specifically as we could. But I'm sorry, just to be clear, so you believe, you agree with the defense that by asking for a bill of particulars, the defendant is objecting to the indictment? No. Not with the validity? Could you ask that question earlier? No, I don't think that's, I think that's a wholly distinct issue, which is probably why Justice Walker raised the issue of this being two different issues. I don't believe, for what my opinion is worth, that he was objecting to the validity of the indictment. When one objects to the validity of the indictment, that is different. Yeah, the bill of particulars is what are the charges and how am I going to defend against this? Those are two totally different issues. And here we answered the bill of particulars. And when we did that, the trial judge said, well, I mean, I don't know what you want me to do. They answered as specifically as they can. Because this case is about an in-resident predator. And as the case law is replete with the law that in-resident predators are treated differently in these types of scenarios. They don't have an alibi defense because they live and have unlettered access to their victims. Six, seven, eight, nine-year-old children have no capacity to put something in a calendar context unless it's near a birthday or Christmas or a holiday. I was listening to the radio the other day and there was a commercial about one of those photo preservation companies and they said, it's the events we remember, not the dates. And I realized that is exactly the issue in this case. A six-year-old child who is being sexually assaulted by her own father in her own home, first of all, has no capacity to even understand that this is a crime or that it's wrong. And as she slowly begins to realize something is wrong here, he threatens her and tells her, we don't snitch on each other. And she testified, she took that as a threat and she kept her mouth shut. Which allowed his predatory subterfuge to continue for years. What defense is an in-resident predator going to mount in a three-month indictment? In a six-month indictment, six years, it doesn't matter. Because in this case, there is no defense other than to attack the state's case. Alibi is not going to be an option. The dates are not essential factors in sex cases. We know that from the case law. The state only needs to provide the defendant with the best information it has and this record affirmatively establishes that we did that. Regarding the ineffective assistance of trial, the failure to object to the tally marks for hearsay, I would like to know that counsel did in fact object to the admission of the tally marks. There was a written motion, which is not in the record, so we don't know if hearsay was a basis that was advanced by trial counsel or not. Defense counsel did say, we simply don't want the evidence in, we're asking that you exclude it. So to now claim ineffective assistance of counsel for failure to object on this basis as a matter of fact and as a matter of law, defendant cannot meet his burden. Do you agree it's hearsay? No, it's absolutely not hearsay. It couldn't be farther from hearsay. We have a victim testifying in court. Hearsay is an out-of-court statement. But if each tally mark means he did it, he did it, he did it, he did it, that's why he's saying it's hearsay. It's an interesting question. It's not. It seems like it's interesting, but it's not. What does that mean to you? Well, if you testify, it means that he has $5,000. It's corroboration, but it's not hearsay. She's in court testifying to that and was cross-examined pretty extensively by defense counsel on this. Why wouldn't it be considered a prior consistent statement? At best, it could be considered a prior consistent statement. Which is hearsay. It's better than a hearsay analysis, but it's not a prior consistent statement either because corroboration is not the same thing as This does not say my father sexually abused me. This is a number. It's a guess, but an estimation. I'm sorry? I think you're really arguing that it's an exception because it's clearly hearsay. I totally disagree. I felt about this when I was writing the report. In addition, a hearsay is an out-of-court statement used, offered for the truth of the matter of certain. It's not a statement. And it's not being offered for the truth of the matter of certain. It's not a nonverbal communication. It's not. No, it's not. Because here, she made those marks and never even said anything to anybody. She meant for that to be an assertive conduct. You don't have to say anything to have for it to be ultimately a hearsay statement. It's not hearsay. When an umbrella goes up, nothing's being said. Then if I decide it's raining outside, that umbrella was hearsay. The umbrella going up. I don't really know that it's raining outside. It's very similar to that. It is clearly hearsay, and I think we all agree on this. We disagree on this. It's probably an exception. It's not hearsay at all. It's not an out-of-court statement offered to prove the truth of the matter of certain. It's a tally mark. That's all it is. Then it was unrelevant. Irrelevant. Oh, it's not. Your argument does not depend on whether it is or isn't. I don't believe that. I mean, the tally marks were, you know, they were what they were. We'll all disagree. You are the judges wearing the black dresses. You get your rule of the day. I respectfully disagree. We do have rules. Rules, I'm sorry. I apologize. I apologize. The pivotal issue in this case is the telltale suicide attempt by the defendant, which completely corroborates the victim's testimony in this case. The tally marks, again, for what they were, even if this court finds their hearsay, which we respectfully disagree, at best or at worst, it's harmless error. It didn't validate or anything. This is just corroboration like a lot of other corroborative testimony. Regarding the failure to object on the basis of relevance to Detective Castaneda's testimony that 85% of the child sex cases he works with involve outcry, again, defense counsel did object. The basis of that objection was when we attempted to have the detective qualified as an expert, and the judge refused that and said he can testify as to what his experience is for what that's worth, because, again, the whole issue that the defendant was going after was to attack the delayed outcry of this victim in this case. That was in play pretrial. So that is what made this testimony relevant and admissible, because juries don't know. This is not common knowledge that child sex cases typically involve outcries. Now, when defense counsel attempted to ask Detective Castaneda what the conviction rate was, that was improper because that was never entertained at the pretrial, and that probably would have come to bit defendant in the behind. We don't even know what that evidence is, so that's complete speculation, too. The failure to object to the state's closing argument. The defendant takes the closing arguments completely out of context. At no time do we argue that there's a lack of exaggerating evidence. The arguments, as we've noted in our brief, are clearly arguing the defendant's admissions of guilt, not only to his ex-wife, but to the social worker, where he admits that he sexually abused his daughter multiple times over a period of years. Regarding the denial of the subpoena for the victim's mental health records. Again, the trial court was proper in this regard when it was alerted to the fact that all of the doctors, Dr. Tellerman is a doctor that the victim had seen prior to the outcry, and many years prior about the parent's divorce, and then Children's Memorial, Denise Schaefer, Dr. Chalala, and the social worker, Keelani, were all protected under the statutory rape statute type of thing. These were clearly statements made after the outcry and after the charging, and the defendant is attempting, by using escleroma improperly, to put the cart before the horse. When the defendant has or requests a subpoena to be issued, the defendant has a burden to establish materiality and relevance. By citing escleroma, he's trying to shift that burden into an in-camera inspection by the trial judge. It's totally improper, and escleroma is not applicable in this case. In escleroma, the defendant was attempting to subpoena the DCFS records regarding the investigation of his own charging documents that resulted in his trial on those offenses. Those were absolutely material and relevant and should have been subjected to an in-camera inspection. We don't have that case here. How does the defendant show relevance if nobody has reviewed the documents? Well, that's always the circular argument that we have. Now here, I'm going to offer this up. The defendant told the trial judge that he was requesting these records to determine if the victim had denied abuse or had personality disorders affecting her credibility or her moral turpitude for telling the truth. And then he claimed that some of the victim's relatives had indicated to him that she had previously made untrue statements. Well, that was really true. The defense counsel could easily have called the victim's relatives to testify to that, but there was no nexus between that and her counseling for being a victim of predatory criminal sexual assault. The argument is always, well, we all know what's in there. We'd love to see if there's something relevant in there, but that's not the standard. The defendant has to establish materiality and relevance and hoping that something might be juicy in there doesn't even come close to establishing that burden. And for those reasons, the trial court denied those subpoenas. They were not subject to an in-camera inspection whatsoever, and that is not an abuse of discretion. Barring any other further questions from this court, the people respectfully request that this court affirm the defendant's conviction and sentence for the predatory criminal sexual assault of his very young daughter. Does the state acknowledge that there was error in the trial court's failure to comply with Supreme Court Rule 439? Oh, yes. Yes. They just can't seem to get that. It comes up in so many cases. I share your frustration. We all understand that Supreme Court rules are mandatory. Yes. Lawyers, judges don't have a right to decide which rules they're going to follow? Totally agree. So where does that, how does that play into this case? Okay, well, first of all, it's forfeited because there was no objection. The judge forgot to, neglected to ask the jury, it was going great, understand, accept, understand, accept, and she just failed to ask that they understood that he wasn't required to present evidence. But if it's forfeited, it can be analyzed under plain error? Yes, absolutely. In this case, though, regarding that problem, the defendant in this case did present evidence. So that really undermines any notion of prejudice. It's not a SEBI kind of a situation because in SEBI, the jurors weren't instructed as to how to weigh evidence or how to weigh credibility, and that's in that case where I think it was three or four police officers had testified to, I think it was a battery to a police officer, and none of the officers knew how the injured officer got hurt, and none of the officers' testimony conflicted with the defense witnesses. So by the failure to properly instruct under 431B in SEBI, the jury was really left with an inability to understand how to weigh credibility issues and the fact that it hadn't been properly instructed, and we don't have that in this case where the defendant did, in fact, present evidence. So it's not a SEBI kind of a situation. SEBI is not a case that gets invoked every time there's a credibility issue. That's not what SEBI says. That's an overreaching of SEBI, and we just don't have SEBI application in this case. But we certainly share the frustration under 431B issues. If anyone has any questions, we rely on all of the arguments presented in our brief and ask for affirmation. Thank you. Thank you. We're not necessarily asking for a bright line rule regarding a certain time period where indictments have to terminate, right? We're just asking this to be reviewed on a case-by-case basis. In this case, before trial, what they had information of was six incidents in five years. I think they can be expected to provide a little more time detail regarding those six incidents over five years to enable the defendant to be aware of the charges and prepare a defense. The state just also argued that we cited no cases striking down an indictment based on a five-year period, but we actually did in the brief cite cases, not in Illinois. But the South Carolina case, that was a six-year indictment, but they said that they were unable to discern how any defendant could effectively defend himself against a six-year time frame. In a New York case, Kindle, which actually involved much shorter periods, 10 months, 12 months, and 16 months for different complainants. Do you read those cases as setting a bright line rule, either of them? No. No, but they're indicative that this five-year period is far too broad, especially compared to Kindle where it was less than a year for a couple of them, or 10 months, 12 months, and six months. And Kindle also said that they should be able to expect an eight-year-old to be able to pinpoint at least seasons, holidays, school, birthdays, things like that. And that's what could have been done here. But that doesn't mean that an eight-year-old is not the same as a six-year-old. Yes, yes, of course. And here we cover six up to – she said it started when she was either six or seven and terminated before she was nine. But I don't think the state has any support in this brief for the claim that an eight-year-old – Her testimony was six to nine. Testimony said it started – the first incident was when she was six or seven. She wasn't sure about that. No scientific support that an eight-year-old can't mark summer versus winter or what period in school. Well, doesn't that go to credibility then? I mean, are you contending that if the six, seven, or eight-year-old cannot pinpoint a season or a birthday or something else, that therefore the charge cannot be brought and put before a fact finder to decide whether that recalled memory at the time of trial is credible and worthy of consideration? No, because I think that starts to leak into a sufficiency of the evidence challenge. And the state doesn't need to prove that occurred on a specific date to secure it. I understand, but if you're urging us to require a five, six, seven, eight-year-old, whatever age group you want to pinpoint, to say that they must provide the defendant with some season of the year, and if that victim is unable to do it, therefore they can't bring a charge, it seems to me that that really goes towards the credibility of that witness when that witness is testifying. And the defendant has pretty much free reign to cross-examine that victim and the recollections that he or she is testifying to. Right, and that cross-examination would, again, go to sufficiency, but we're not asking for a requirement that specific types of time markers be required in every case. I still think it needs to be examined case by case. And here an indictment spanned from her age six to 11. Six to 11. Right. And she was able to narrow that down without, I don't think, any prompting at trial. She was able to narrow it down. Well, she narrowed it down through the Bill of Particulars. It was narrowed down in the Bill of Particulars, which put the defendant on notice as to that condensed time frame. No, the Bill of Particulars came back and said the exact same time frame as the indictment, five years. You're right. It was only at trial where she said it stopped before her younger brother was born. In the statement, so we're not asking for any specific timeline rule or any required type of time marker, but we're just asking in this case to find that a five-year period, covering ages six to 11, that ultimately proved inaccurate, was too broad and violated Mr. Albarn's due process right to be able to prepare a defense. And the state says that, you know, they on the defense here would have been attacking the state's case as if that's not important, as if it's not important to be able to challenge the credibility at trial by questioning when certain things happened and being able to investigate when some of these time markers occurred, like the brother being born, the bedroom moving. They could have been able to investigate and probe things like that, and like I said earlier, any other unpursued avenue of investigation that might have only covered part of the indictment and so was deemed not worthwhile. Regarding the second issue, they brought up again, as they did in the brief, that the defense motion to preclude the time markers is missing. We, as I've said in the reply, are happy to have this court treat it as a preservative, but I would note it was not put as a hearsay objection in the motion for a new trial, so it would be forfeited anyway. You indicated in your reply that you were going to try to supplement the record. I assume that didn't work. Unable to obtain it from counsel. Counsel mentioned regarding prejudice that the suicide was a sign of guilt. I think it's no more indicative of guilt as innocence. It could be showing a man who feels guilt or a man who feels shocked at his horrible allegations. The pretrial, she mentioned that the objection was proper to the question of whether these thousand prior cases of physically outcries resulted in convictions, and said that was different than what had been ruled on pretrial, or comported with what had been ruled on pretrial. But pretrial, the judge said counsel could ask how many had resulted in findings of not guilty. The corollary, of course, is conviction. So I think the judge indicated to counsel that counsel could ask to prove the relevance of these 85 percent of a thousand cases that had delayed outcries, to prove the relevance, and then sustain the objection contrary to that pretrial ruling. If you'd like me to sit down, I will. Mr. Harris, Ms. Cook raised an issue that I wanted to just hear you respond to. You argue that the indictment is overbroad, and Ms. Cook believes that this is different because we have an in-resident victim, and how do you respond to that? In terms of you being able to mount an LMI defense and so forth. Well, due process doesn't vanish based on an in-resident victim. You still need to be able to prepare a defense, and defenses could be examined if there was a narrower timeline or seasons of school years or holidays to determine where the defendant was, what his work schedule was, what the mom's work schedule was, which would be relevant, where the bedrooms were, where the other siblings lived, things like that. So I understand certain cases are more difficult to prosecute, but I think the due process clause of the Constitution contemplates that it sometimes makes prosecution in difficult cases challenging, and that's something we as a society accept to ensure procedural rights of a criminal defendant. About 430 when the counsel said that the defendant ultimately presented evidence that's not really error, the Supreme Court in the study made it clear that once there is an error, the only question remaining is whether the evidence is closely balanced, not whether that error is mitigated by defense actions later. And I don't think I need to persuade this court about timelines being hearsay, but if you'd like to hand it to me, please. In this court, I think the Sixth Division earlier this year in People v. Ramos, dealing with cellular phone location, wrote that information that's hearsay when presented as numerals in a spreadsheet is still hearsay when it's converted to a map and remains hearsay when conveyed at trial. Thank you, counsel. We learned a little bit. Thank you for this talk. For excellent argument, very good briefing, and we will take this matter under advice.